# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DeCOSSAS, et al. | CIVIL ACTION |
| VERSUS | CASE NO. 16-3786 |
| ST. TAMMANY PARISH SCHOOL BOARD, et al. | SECTION: "G" (5) |

## ORDER

This litigation arises out of the expulsion[1] of M.D.,[2] a minor child who attended a public high school in St. Tammany Parish.[3] Pending before the Court is Defendants St. Tammany Parish School Board ("the School Board"), Keven R. Darouse ("Darouse"), W.L. Folse, III ("Folse"), Leonard Tridico ("Tridico"), Neal M. Hennegan ("Hennegan"), Peter J. Jabbia ("Jabbia"), and Michael Astugue's ("Astugue") (collectively, "Movants") "Motion for Summary Judgment."[4] Having considered the motion, the memoranda in support and in opposition and reply, and the applicable law, the Court grants the motion in part to the extent that it requests summary judgment on Plaintiffs' claims against the Movants in both their individual and official capacities pursuant to 42 U.S.C. § 1983. The Court denies the motion in part regarding Movants' request that the court either dismiss any alleged state law claims or decline to exercise supplemental jurisdiction over any remaining state law claims against Movants. The Court hereby grants Plaintiffs leave to amend

---

[1] Although Plaintiffs refer to the actions against M.D. throughout the complaint and opposition as a "suspension," it appears M.D. was in fact expelled although provided an alternative learning environment.

[2] Out of respect for Plaintiffs' minor child's privacy and pursuant to Federal Rule of Civil Procedure 5.2, the Court will refer to Plaintiffs' child using only the child's initials, M.D. *See* Fed. R. Civ. P. 5.2(a) ("Unless the court orders otherwise, an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may only include . . . the minor's initials . . . .").

[3] Rec. Doc. 15.

[4] Rec. Doc. 62.

their complaint within 14 days of this order to provide a more definite statement as to their state law claims.

The Court also denies the motion in part to the extent that it requests summary judgment on Plaintiffs' claims against the School Board pursuant to 42 U.S.C. § 1983 because Plaintiffs have challenged the constitutionality of Louisiana Revised Statute § 17:416, which is the statute that the School Board allegedly relied upon in its decision to expel M.D. The Court will rule on the School Board's liability after it decides the constitutionality of Louisiana Revised Statute § 17:416.

## I. Background

### A.    *Factual Background*

In this litigation, Plaintiffs allege a variety of claims stemming from the questioning, search, and eventual expulsion of their minor child M.D. for the child's alleged drug-related misconduct on school grounds.[5] Specifically, Plaintiffs allege violations of the First, Fourth, Fifth, and Fourteenth Amendments.[6]  Plaintiffs name as Defendants the St. Tammany Parish School Board, as well as the following individuals: Deputy Bryan Gerchow, St. Tammany Parish Sheriff's Deputy; Darouse, supervisor of administration for the School Board; Folse, supervisor of the School Board; Tridico, chief disciplinarian at M.D.'s high school; Hennegan, elected member of the School Board; Jabbia, assistant supervisor for the School Board; and Astugue, assistant principal at M.D.'s high school.[7]

---

[5] Rec. Doc. 15 at 1.

[6] *Id.* at 1–2.

[7] *Id.*

Plaintiffs allege that on January 8, 2016, M.D. was ordered to Tridico's office.[8] Plaintiffs allege that Tridico, in the presence of Deputy Gerchow, interrogated M.D. regarding drug allegations and searched M.D.[9] Plaintiffs further allege that Tridico seized a cellphone that M.D. was carrying and demanded that M.D. unlock the cellphone, which M.D. eventually did.[10] According to Plaintiffs, Deputy Gerchow, Tridico, and Astugue then searched the contents of the cellphone.[11] Plaintiffs allege that Astugue and Tridico recognized the number of another student, A.G., on the cellphone and then questioned and forced A.G. to sign an untrue statement.[12] Plaintiffs further assert that Tridico and Astugue then confronted M.D. with A.G.'s statement and also forced M.D. to sign untrue statements.[13] Plaintiffs allege that Deputy Gerchow and Tridico "assaulted and battered" and threatened to arrest M.D., even though they had no reasonable belief that M.D. had committed an offense.[14] Plaintiffs allege that the "intensive search" of M.D. "resulted in absolutely no evidence of wrongdoing, drugs, or other prohibited materials or violations of school's policy."[15] Plaintiffs also allege that Astugue, Tridico, and Deputy Gerchow interrogated M.D. without issuing a *Miranda* warning first.[16]

Plaintiffs allege that Defendants did not notify M.D.'s parents during the interrogation and search and that they were only advised of the allegations after M.D. had been suspended with a

---

[8] *Id.* at 8.

[9] *Id.*

[10] *Id.* at 9, 11.

[11] *Id.* at 11.

[12] *Id.* at 12.

[13] *Id.* at 12–13.

[14] *Id.* at 14.

[15] *Id.* at 11.

[16] *Id.* at 13.

recommendation for expulsion on "disciplinary and drug allegations."[17] Plaintiffs further allege

that on January 14, 2016, the School Board and the other Defendants held a constitutionally

inadequate hearing at which Tridico and Astugue stated "unfounded opinions and cited illegal

evidence based on illegally obtained . . . information" from M.D.'s father's cellphone.[18] Plaintiffs

allege that Darouse ordered the expulsion of M.D.[19] According to Plaintiffs, an appeal of M.D.'s

expulsion was denied.[20] Plaintiffs also appear to allege that Defendants' hearings for expulsion

and disciplinary actions violated their right to due process.[21] Finally, Plaintiffs challenge the

constitutionality of Louisiana Revised Statute § 17:416, which requires a student found guilty of

possession or distribution of a controlled substance to be expelled for a minimum of four complete

school semesters.[22]

### B.    *Procedural Background*

On April 29, 2016, Plaintiffs filed the instant action pursuant to 42 U.S.C. § 1983, alleging

federal constitutional violations and seeking expungement of all relevant records, reversal of the

suspension, and general and punitive damages against all Defendants.[23] On July 15, 2016, Deputy

Gerchow filed an answer to the complaint.[24] On July 18, 2016, Movants filed a "Rule 12(b)(6)

Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement Pursuant to FRCP

---

[17] *Id.* at 20, 23.

[18] *Id.* at 24.

[19] *Id.* at 25.

[20] *Id.*

[21] *Id.* at 6.

[22] *See id.* at 7. *See also* La. Rev. Stat. § 17:416 C(2)(a)(ii).

[23] Rec. Doc. 1.

[24] Rec. Doc. 3.

Rule 12(e)."[25] On March 27, 2017, the Court granted the motion in part to the extent that it requested a more definite statement and granted Plaintiffs 21 days to amend the complaint to provide a more definite statement of: "(1) their federal and state law claims against the School Board; (2) their claims against the individual Movants for relief under Section 1983, including a non-conclusory statement of the specific conduct in which individual Movants engaged to violate their rights and whether they are suing the individual Movants in their personal or official capacities; and (3) their claims for relief against the individual Movants under state law."[26] On April 17, 2017, Plaintiffs filed an amended complaint.[27] On August 10, 2017, the Court granted Deputy Gerchow's motion for summary judgment to the extent that it requested summary judgment on Plaintiffs' claims against him under 42 U.S.C. § 1983.[28]

Movants filed the instant motion for summary judgment on July 17, 2017.[29] Plaintiffs filed an opposition on July 25, 2017.[30] With leave of Court, Movants filed a reply on August 2, 2017.[31]

## II. Parties' Arguments

### A.    *Movants' Arguments in Support of the Motion*

The remaining Defendants move the Court for summary judgment on all of the claims that Plaintiffs have brought against them.[32] In support of the motion, Movants state that Plaintiffs

---

[25] Rec. Doc. 4. Deputy Gerchow did not join the motion.

[26] Rec. Doc. 14 at 26.

[27] Rec. Doc. 15.

[28] Rec. Doc. 81.

[29] Rec. Doc. 62.

[30] Rec. Doc. 69.

[31] Rec. Doc. 79.

[32] Rec. Doc. 62 at 1.

apparently attempt to raise the following claims for relief against Movants: (1) First Amendment claims against Tridico, Astugue, and Deputy Gerchow;[33] (2) Fourth Amendment claims against all named Defendants; (3) Fifth and Fourteenth Amendment substantive and procedural due process claims for relief against all named Defendants; (4) Fourteenth Amendment claims against all named Defendants; and (5) various state law tort claims.[34] Plaintiffs have not disputed Movants' characterization of these claims.[35]

Movants first argue that Plaintiffs have not alleged any facts to support their First Amendment claims.[36] Moreover, Movants aver that there is no evidence of any violation of the First Amendment.[37] Because there are no allegations or evidence implicating the First Amendment "in any way other than the conclusory assertions made by Plaintiffs," Movants contend that Plaintiffs' claims for violations of the First Amendment should be dismissed.[38]

Next, Movants argue that Plaintiffs' claims under the Fourth Amendment are not supported by competent evidence and should therefore be dismissed.[39] According to Movants, the search of a student by school officials does not require probable cause and is instead justified where there are reasonable grounds for suspecting that the search will result in the discovery of evidence that

---

[33] Deputy Gerchow has already been dismissed from this action. *See* Rec. Doc. 81.

[34] Rec. Doc. 62-1 at 2–3.

[35] Although the Defendants/Movants did not identify the issue, Plaintiffs also appear to challenge the constitutionality of Louisiana Revised Statute § 17:416. Therefore, in accordance with Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b), the Court has certified the constitutional challenge and given notice to the State attorney general.

[36] *Id.* at 4.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 5.

the student is violating the law or the rules of the school.[40] Movants argue that there is nothing alleged in the amended complaint and presumably no evidence now being offered that suggests there were not reasonable grounds for suspecting a violation of school rules.[41] Movants aver that the undisputed evidence shows Tridico had reasonable grounds to search M.D.'s phone due to evidence of participation in the purchase, use, sale, and/or possession of illegal drugs.[42] Movants further assert that it is undisputed that M.D. was not authorized to carry and use a phone at school and that M.D. consented to the search of the phone, as he gave school officials the code to enter the phone.[43] Moreover, Movants assert that it is undisputed that M.D. admitted that he violated school rules giving rise to "mandatory discipline" for possession or use of drugs under Louisiana Revised Statute § 17:416.[44] Movants additionally argue that the search of the phone was reasonable, as it "had a moderate chance of finding evidence of wrongdoing."[45] Further, Movants assert that Tridico had reasonable grounds to question M.D., and this questioning led to M.D.'s admission to violating the law and school policy.[46] Movants also assert that all of the events took place on school property and during school hours.[47] Finally, Movants contend that there is no evidence of arrest or seizure of M.D. in this case such that the Fourth Amendment is implicated.[48] Movants contend that there is no basis either in law or in fact to allow recovery by Plaintiffs against

---

[40] *Id.* at 6 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)).

[41] *Id.*

[42] *Id.* (citing Rec. Docs. 45-2, 62-2, 62-3).

[43] *Id.* (citing Rec. Doc. 33-8 at 29–30).

[44] *Id.*

[45] *Id.* at 6 n.25 (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009)).

[46] *Id.* at 6.

[47] *Id.* at 7.

[48] *Id.*

Movants for a violation of the Fourth Amendment.[49]

Next, Movants contend that there is no evidence that there was a violation of Plaintiffs' substantive due process rights under the Fifth and Fourteenth Amendments.[50] According to Movants, a plaintiff who brings a substantive due process claim must allege a deprivation of a constitutionally protected right and must demonstrate that the government action is not rationally related to a legitimate government interest.[51] Here, Movants contend that Plaintiffs cannot "reasonably state" that the investigation by school personnel of a student for purchase and possession of drugs at school is not rationally related to a government interest.[52] Movants argue that even taking the facts of the case as alleged by Plaintiffs as true and accepting the evidence submitted, "it cannot be said that a student consenting to a search of his phone (or his father's phone) that provides evidence of [a] violation of school policy and purchase and possession of drugs, is something that would 'shock the conscience' such that there is a violation of any substantive due process."[53] Likewise, Movants aver that even if the individual Movants instituted an unlawful inspection of a cellphone, which Movants allege is unsupported by the evidence, this matter does not rise to the level of a deprivation of substantive due process.[54] Moreover, Movants assert that there is no allegation that what individual Movants did was arbitrary, capricious, or

---

[49] *Id.*

[50] *Id.* at 8. Movants also incorporate Deputy Gerchow's argument with respect to M.D.'s mother's claims for violation of due process in his memorandum in support of his motion to dismiss. *Id.* at 7 n.26 (citing Rec. Doc. 17-1 at 4–5).

[51] *Id.* at 9 (citing *Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016); *Mikeska v. City of Galveston*, 451 F.3d 376 (5th Cir. 2006)).

[52] *Id.*

[53] *Id.* (citing *Cripps,* 819 F.3d at 232).

[54] *Id.*

unrelated to the legitimate goal of maintaining an atmosphere conducive to learning.[55]

Movants further argue that the evidence demonstrates that M.D. was offered "ongoing education" such that he was not at risk of being deprived of a constitutionally protected property interest.[56] Movants aver that the Fifth Circuit has recognized that Louisiana's public education system includes alternative education in cases involving recommended expulsions and does not implicate a Fourteenth Amendment interest.[57] Movants argue that Plaintiffs have not alleged that M.D. was denied a right covered by the 14th Amendment, education or otherwise, which Movants assert is a "necessary requisite of any substantive due process claim."[58] Moreover, Movants contend that a state remedy exists for addressing unlawful expulsions, and therefore, no violation of Plaintiffs' substantive due process rights occurred.[59]

Next, Movants contend that the evidence demonstrates that procedural due process was not violated.[60] According to Movants, the evidence in the record shows that there was no danger of total exclusion of M.D. from school and that Plaintiffs received adequate process.[61] Movants contend that Plaintiffs were entitled to oral notice of the charges against M.D. and an explanation of the evidence with an opportunity to present M.D.'s side of the story.[62] Movants further aver that the School Board is not required to offer counsel to Plaintiffs, and that Plaintiffs' allegations of a

---

[55] *Id.* at 10 (citing *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990)).

[56] *Id.* (citing Rec. Doc. 62-2).

[57] *Id.* at 10–11 (citing *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 653 F.3d 685, 690 (5th Cir. 2011); *Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 395 (5th Cir. 2011)).

[58] *Id.* at 11–12 (citing *Swindle*, 655 F.3d at 394).

[59] *Id.* (citing La. Rev. Stat. § 17:416(C)(5)).

[60] *Id.* at 13.

[61] *Id.*

[62] *Id.* (citing *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).

policy designed to "avoid due process hearings for suspensions and disciplinary actions" contradicts other allegations set out in the amended complaint as well as evidence in the record.[63] Movants argue that there is no allegation or evidence in the record that Plaintiffs offered any information to Movants that Movants refused to consider.[64] According to Movants, the evidence demonstrates that School Board members questioned M.D. about his involvement in the incident at issue at the appeal but that M.D. refused to provide any responsive information.[65]

Because, Movants argue, Plaintiffs cannot show a deprivation or potential deprivation of a property interest and Plaintiffs were provided with all of the procedural safeguards to which they were entitled, Plaintiffs cannot prevail on claims against any Movant for violation of their substantive or procedural due process rights.[66] Movants submit that there is no evidence of any violation of law during the Movants' interactions with M.D. and his parents and that Plaintiffs' claims instead "fall within the purview of Louisiana tort law, not Constitutional violations."[67]

Next, Movants argue that Darouse and Hennegan, as decision makers at the School Board disciplinary hearings, are entitled to qualified immunity, and Plaintiffs' amended complaint related to the sufficiency of the evidence at those hearings does not overcome the defense of qualified immunity.[68] Movants aver that Darouse, the hearing officer for the School Board in connection with student disciplinary proceedings, is immune from suit while acting in his role as the hearing officer and that Hennegan is immune from suit while acting as one of the School Board members

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 14.

[67] *Id.* at 9. Movants also deny that there is even a claim in tort. *See id.* at 9 n.27.

[68] *Id.* at 14, 16–17.

adjudicating appeals.[69] Movants argue that the allegations against Hennegan are "completely innocuous," as he merely offered his opinion to Plaintiffs regarding this matter as a School Board member and decision maker.[70] According to Movants, Plaintiffs allege that School Board members "implored Plaintiffs to provide information to allow the Board to address their concerns, to no avail."[71] Thus, Movants argue that Hennegan is entitled to qualified immunity.[72]

Movants further aver that Plaintiffs allege that Darouse and Hennegan, in their respective decision-making roles, were "faced with evidence that M.D. had in fact done something in violation of school rules, and in accordance with the mandates of Louisiana State Law, excluded the student from his regular education setting in accordance with law."[73] According to Movants, Plaintiffs' claims that the evidence at the hearings was insufficient does not give rise to a claim under Section 1983 that would overcome Darouse and Hennegan's defense of qualified immunity.[74]

Movants further contend that all of the individual Movants are entitled to qualified immunity, because Plaintiffs cannot make out a violation of a constitutional right.[75] Movants assert that Plaintiffs allege that looking at the evidence on the cellphone in M.D.'s possession is a constitutional violation.[76] However, Movants argue that Plaintiffs cannot meet the first

---

[69] *Id.* at 14.

[70] *Id.* at 16.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.* at 16–17 (citing *Wood v. Strickland*, 420 U.S. 308, 319–320 (1975)).

[75] *Id.* at 17.

[76] *Id.*

requirement to overcome qualified immunity, because they have not stated a violation of a constitutional right.[77] Movants argue that a court order is not required for a search of a student by school employees on school grounds and that the evidence demonstrates that there was reasonable cause for the search of M.D.'s person and cellphone in this instance.[78] Additionally, Movants argue, there can be no constitutional violation where, as here, M.D. actually agreed to unlock the cellphone and allow a limited search of the contents.[79] Movants argue that while Plaintiffs allege that the phone belonged to M.D.'s father, M.D. had apparent authority over the phone, and therefore, any constitutional violation claimed by M.D.'s father is groundless.[80] Moreover, even if there was a constitutional violation, Movants argue that it was not clearly established that M.D. had a "right to use a phone in the context of a school setting for drug transactions at school."[81]

According to Movants, because courts have not outlined specific requirements of hearing officers in the context of school discipline, Movants cannot be shown to have violated any clearly established law regarding disciplinary hearings.[82] Movants also contend that there is simply no evidence in the record to support a claim against Folse or Jabbia, as neither one made the decisions at issue in this case.[83] Thus, Movants aver that the individual movants are entitled to qualified immunity and that the claims against the individual Movants should be dismissed on the basis of

---

[77] *Id.* at 18.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 18 n.38.

[81] *Id.* at 18.

[82] *Id.*

[83] *Id.* at 19.

qualified immunity alone.[84]

Finally, Movants argue that Plaintiffs appear to raise but cannot prevail on any state law claims against them.[85] Movants argue that Plaintiffs cannot recover on any state law claims, because the individual Movants were all performing their duties with the School Board at the time of the act or omission allegedly giving rise to Plaintiffs' claims.[86] Moreover, Movants contend that neither the factual allegations nor the evidence in the record give rise to claims under state tort law.[87] Movants further contend that in the absence of a federal claim, the Court should decline to exercise jurisdiction over any remaining state law claims.[88] Movants argue that Plaintiffs have not produced any evidence of injury to M.D. as a result of any action by Movants.[89] According to Movants, Plaintiffs have not submitted evidence that M.D. was denied an education or that he underwent medical or psychiatric treatment.[90]

## B.    *Plaintiffs' Arguments in Opposition to the Motion*

In opposition, without citing to any evidence in the record and only submitting affidavits by Plaintiffs M.D. and M.D.'s mother, Plaintiffs argue that the case is "full of triable disputed facts."[91] Plaintiffs argue that Movants' memorandum in support of the motion for summary judgment is "replete with canned language incorporated from other sources indicating that

---

[84] *Id.* at 18.

[85] *Id.* Specifically, Movants identify potential claims of intentional infliction of emotional distress, harassment, assault and battery, and false imprisonment.

[86] *Id.* at 19–20 (citing La. Rev. Stat. § 17:439).

[87] *Id.* at 20–22.

[88] *Id.* at 22.

[89] *Id.*

[90] *Id.*

[91] Rec. Doc. 69 at 1.

members of the School Board have no legal or constitutional obligations or limits, and those that deal with school boards are told to leave their constitutional rights outside because the School Board employees do not have to pay any attention to them."[92] Plaintiffs aver that the actions of Tridico, Astugue, and Darouse demonstrate a knowing disregard of Plaintiffs' rights.[93] Plaintiffs contend that M.D.'s status as a minor without any representation made it easier to "enforce their will on him."[94] According to Plaintiffs, there were no drugs found, but "they" invaded the cellphone, "which is clearly protected under the First Amendment."[95] Plaintiffs argue that there was no evidence that there were "any drug issues at any time on the school grounds or during school hours" and that there was never a voluntary confession about drugs.[96] According to Plaintiffs, the School Board's authority is "clearly limited" by state statute, so the investigation in this case exceeded "the jurisdictional authority given."[97] Because the School Board exceeded its jurisdiction, Plaintiffs contend, it waived "any protection there might have been for just 'doing' their job."[98]

Plaintiffs aver that the argument that Darouse "was a hearing officer and immune from suit is ridiculous," because a hearing officer for the School Board cannot intentionally ignore statutory and constitutional due process standards and intentionally tell Plaintiffs the wrong information

---

[92] *Id.* at 2.

[93] *Id.*

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.* at 2–3 (citing La. Rev. Stat. § 17:416).

[98] *Id.* at 3.

about hearings.[99] Plaintiffs further argue that Hennegan, as an elected member of the School Board, cannot escape liability as he stepped out of his role as "judge" when he advised Plaintiffs not to listen to their attorney and not to file suit.[100] Next, Plaintiffs contend that Folse cannot escape liability, as he was in charge of the training and daily activities of Tridico, Astugue, and Darouse, who filled in for Folse at hearings such as M.D.'s hearing in this case.[101] According to Plaintiffs, Folse inadequately prepared Darouse, which prevented Plaintiffs from receiving due process.[102] Plaintiffs assert that Folse wrote Plaintiffs letters approving what Darouse had done and was "obviously staying up to date on the detailed activities."[103]

Plaintiffs next aver that the cases cited by Movants are dated, as smart phones did not exist at the time of those decisions.[104] Plaintiffs argue that *Riley v. California* dealt with "improper cell phone demands by the authorities."[105] Plaintiffs argue that "Tridico, Astague [sic], Darouse, *et. al.*" used Deputy Gerchow "as the muscle" to detain M.D. and intimidate M.D. "with threats of physical violence, arrest, or both."[106] According to Plaintiffs, they knowingly violated Plaintiffs' rights by unlocking M.D.'s father's cellphone and illegally copying and printing "constitutionally protected private data under the First Amendment" and forced M.D. to be a witness against himself in violation of the Fifth Amendment.[107] Plaintiffs further contend that they used the evidence to

---

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.* at 3–4.

[103] *Id.* at 4.

[104] *Id.*

[105] *Id.* (citing 573 U.S. 1 (2014)).

[106] *Id.* at 4–5.

[107] *Id.* at 5.

intimate M.D. into signing fabricated statements.[108] Plaintiffs attach affidavits of M.D.'s mother and M.D., which Plaintiffs aver "clearly demonstrate" that the motion for summary judgment is premature and that multiple "justiciable issues of triable facts" exist.[109]

## C.     *Movants' Reply in Further Support of the Motion*

In reply, Movants argue that Plaintiffs cite no record evidence to contest the statement of uncontested material facts submitted by Movants.[110] According to Movants, Rule 56 requires a party asserting that a fact is genuinely disputed to cite to particular material in the record.[111] Movants further argue that Plaintiffs do not point to any authority or evidence to support a claim for violation of the First or Fourth Amendments.[112] Movants argue that Plaintiffs' suggestion that there was no reasonable cause for the search of M.D. and the cellphone, without pointing to any evidence, does not create a genuine dispute of material fact.[113]

Next, Movants argue that Plaintiffs do not cite to any evidence to raise a genuine dispute of material fact as to Plaintiffs' due process claims.[114] Movants maintain that the Fifth Circuit has recognized that a student's transfer to an alternative education program does not deny access to public education.[115] Moreover, Movants argue that Plaintiffs are not entitled to a full scale hearing with cross examination and discovery prior to disciplinary hearings.[116] Because Plaintiffs had

---

[108] *Id.*

[109] *Id.*

[110] Rec. Doc. 79 at 1–2.

[111] *Id.* at 2 (citing Fed. R. Civ. P. 56(a)).

[112] *Id.* at 2–3.

[113] *Id.* at 3 (citing Rec. Doc. 70-1).

[114] *Id.* at 4.

[115] *Id.* (citing *Swindle*, 655 F.3d at 394).

[116] *Id.* (citing *Whiteside v. Kay*, 446 F.Supp. 716, 720 (W.D. La. 1978)).

notice and an opportunity to be heard, Movants contend that they are entitled to summary judgment on Plaintiffs' claims for violations of their rights to due process.[117]

Movants further argue that Plaintiffs cite to no legal or factual authority to dispute that Movants are entitled to qualified immunity.[118] Movants note that Plaintiffs' argument that a School Board member gave Plaintiffs incorrect information regarding the timing of the appeal is of no moment, as Plaintiffs timely appealed to the School Board and had an appeal hearing before the Board.[119] Moreover, Movants assert that a School Board member speaking to a student and his parents at a disciplinary hearing is not a constitutional violation.[120] Movants argue that Plaintiffs point to no evidence that Folse's employees did anything wrong or that they were improperly trained.[121] Finally, Movants argue that Plaintiffs have provided no evidence to raise a genuine dispute of material fact as to Plaintiffs' claims under state law.[122] Accordingly, Movants contend that they are entitled to summary judgment on all claims against them based on the facts, law, and the doctrine of qualified immunity.[123]

## D.     *"Denied" and Undisputed Material Facts*

Plaintiffs admit to the following material facts set forth in Movants' "Statement of Uncontested Material Facts:"[124]

- Kevin Darouse is presently employed by the St. Tammany Parish School Board as

---

[117] *Id.* at 4–5.

[118] *Id.* at 5.

[119] *Id.*

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.* at 6.

[124] Rec. Doc. 62-4.

Supervisor of Administration, and has worked in that capacity since July 2010. Before that, he was Assistant Principal at Fontainebleau High School which is operated by the St. Tammany Parish School Board.[125]

- Kevin Darouse's responsibilities as Supervisor of Administration include acting as the hearing officer for St. Tammany Parish School Board on behalf of the Superintendent of the St. Tammany Parish Public School System in connection with certain disciplinary actions and proceedings involving students. In connection with his responsibility as a hearing officer, he gathers facts and makes determinations concerning student misconduct.[126]

- The St. Tammany Parish School Board has, in the past, and since February 2016, reversed, or sometimes modified the decisions of the Superintendent or his designee on expulsions, including the shortening of an expulsion with a return to the regular education setting.[127]

- It is a violation of the St. Tammany Parish School Board policy for a student to possess a phone at school.[128]

Without citing to any evidence in the record or even their own affidavits attached to Plaintiffs' opposition to the motion, Plaintiffs deny the following material facts set forth in Movants' "Statement of Uncontested Material Facts:"[129]

- In his capacity as Supervisor of Administration for the St. Tammany Parish School Board, Kevin Darouse acted as the Superintendent's designee and hearing officer and was personally involved with and conducted the administrative proceeding on January 14, 2016, relating to investigation and discipline of M.D. for violation of school rules, in particular the purchase and/or possession of a controlled substance, Vyvance in December 2015 and January 2016.[130]

- After an investigation, M.D. was found by School Administrators to have purchased and possessed a controlled substance, Vyvance in December 2015 and January 2016, and M.D. admitted to these offenses and gave written statements of the offenses.[131]

---

[125] *Id.* at 1 (citing Rec. Doc. 62-2).

[126] *Id.*

[127] *Id.* at 3 (citing Rec. Doc. 62-2).

[128] *Id.* at 4 (citing Rec. Doc. 62-3, Rec. Doc. 45-2, Rec. Doc. 45-3).

[129] Rec. Doc. 62-4.

[130] *Id.* at 2 (citing Rec. Doc. 62-2).

[131] *Id.* (citing Rec. Doc. 62-2, Rec. Doc. 45-2 at 5–6).

- The admissions of M.D. resulted in the School Administrator suspending M.D. and recommending expulsion, as is required by law.[132]

- As a result of the recommendation for expulsion, a hearing was conducted on January 14, 2016 by Kevin Darouse, following which M.D. was found guilty of his offense and was expelled for 4 complete semesters, in accordance with law.[133]

- The St. Tammany Parish School Board has instituted, in accordance with law, a system whereby students subject to discipline, even in the event of an expulsion, are not denied or deprived of their education. Students are placed in an alternative education program and school such that they are not denied or deprived of an education. M.D. was not, during the course of disciplinary proceedings, subject to being excluded from the educational process.[134]

- M.D. was not, during the course of proceedings, subject to being out of school for a period greater than 10 days, and the alternative school setting ensured that he was given a free and appropriate public education in accordance with law. M.D. was actually enrolled and continued attending school until he withdrew on February 24, 2016. Neither M.D. nor his parents, ever sought any return to St. Tammany Parish School Board for an education.[135]

- At the hearing conducted by Kevin Darouse, M.D. was given notice of the charges that had been levied against him, and M.D. was given an opportunity to tell Kevin Darouse his side of the story. Neither M.D. nor his parents ever requested an attorney be present at the January 14, 2016 expulsion hearing, nor were they denied the right to be present. M.D. and his mother were allowed to present their side of the story and each of them admitted that M.D. purchased and possessed drugs in violation of School Board policy. Only then was the decision to expel made by Kevin Darouse.[136]

- M.D. had given written statements at school, and confirmed the information in the written statements at the hearing. M.D. and his mother admitted that M.D. was guilty of the conduct, purchase and possession of drugs illegally at school, that, in accordance with law, requires expulsion.[137]

- In performing the hearing involving M.D., Kevin Darouse was just performing his job

---

[132] *Id.* (citing Rec. Doc. 62-2).

[133] *Id.* (citing Rec. Doc. 62-2).

[134] *Id.* (citing Rec. Doc. 62-2).

[135] *Id.* (citing Rec. Doc. 62-2).

[136] *Id.* (citing Rec. Doc. 62-2).

[137] *Id.* at 3 (citing Rec. Doc. 62-2, Rec. Doc. 45-2 at 5–6).

as a Supervisor of Administration. At the hearing, Kevin Darouse advised M.D. and his parents of charges against M.D., and M.D., with his parents and other supporters present, were [*sic*] allowed to address what was alleged to have occurred.[138]

- In connection with the proceeding involving M.D., M.D. was given notice of what he was accused of doing and given an opportunity to respond. M.D. was not deprived of his education and was not in danger of being deprived of his education as a result of any hearing involving Kevin Darouse. M.D. was given an opportunity to respond at the hearing and the discipline meted out, as mandated by law. M.D. was offered an alternative school setting, and utilized this setting for a time, until he withdrew from school with the St. Tammany Parish School Board.[139]

- M.D., through his parents, was given notice of Kevin Darouse's decision, given notice of their right to appeal to the St. Tammany Parish School Board, and appealed the expulsion to the St. Tammany Parish School Board, which appeal hearing was undertaken before the St. Tammany Parish School Board on February 18, 2016.[140]

- At the appeal hearing before the St. Tammany Parish School Board on February 18, 2016, on which Neal Hennegan, School Board Member for District 1 was one of 12 members present to decide the appeal, Plaintiffs' counsel was present, and neither M.D. nor his parents provided any evidence or information to refute the finding made by Kevin Darouse at the January 14, 2016 hearing. According to M.D.'s mother, no evidence was offered by Plaintiffs to the School Board or its members in mitigation of M.D.'s offense.[141]

- According to M.D.'s mother, neither she nor M.D. were providing information based on advice of Plaintiffs' attorney.[142]

- There being no evidence provided to the St. Tammany Parish School Board, it voted to affirm the decision of expulsion set out by law.[143]

- Neither the St. Tammany Parish School Board, nor Superintendent Folse or Associate Superintendent Jabbia had actually participated in the expulsion hearing that Kevin Darouse had undertaken and neither Superintendent Folse or Associate Superintendent Jabbia, refused to allow Plaintiffs or M.D. to provide evidence.[144]

---

[138] *Id.* (citing Rec. Doc. 62-2).

[139] *Id.* (citing Rec. Doc. 62-2).

[140] *Id.* (citing Rec. Doc. 62-2).

[141] *Id.* (citing Rec. Doc. 62-2).

[142] *Id.* (citing Rec. Doc. 62-2).

[143] *Id.* at 4 (citing Rec. Doc. 62-2).

[144] *Id.* (citing Rec. Doc. 62-2).

- At the time M.D. was called to the office, it was to investigate M.D. and his participation in the purchase, use, sale and/or possession of illegal substances in violation of school policy, and because, based on the information in Leonard Tridico's possession, M.D. had been discussing the purchase, use, sale and/or possession of drugs at school with other students on his phone, including via text messages.[145]

- Leonard Tridico and Michael Astugue did not touch, physically accost or brutalize M.D. in any way.[146]

- Leonard Tridico and Michael Astugue did not and have not ever physically threatened M.D. during their dealings with him.[147]

- Leonard Tridico and Michael Astugue did not and have not ever forcibly detained M.D. during their dealings with him.[148]

- Leonard Tridico and Michael Astugue did not and have not ever threatened to arrest M.D.[149]

- Leonard Tridico and Michael Astugue did not fabricate and have not ever fabricated a statement for M.D. The two statements that M.D. wrote were in his own handwriting, and M.D. provided this same information to Leonard Tridico and Michael Astugue verbally.[150]

- Neither Leonard Tridico, nor any other School Administrator or employee, nor the School Resource Officer harmed M.D. in any way during the course of the day on January 8, 2016.[151]

- At the end of the school day on Janaury 8, 2016, the cell phone that was in the possession of M.D. that day was turned over to his parent.[152]

---

[145] *Id.* (citing Rec. Doc. 62-3, Rec. Doc. 45-2, Rec. Doc. 45-3).

[146] *Id.* (citing Rec. Doc. 62-3, Rec. Doc. 45-2, Rec. Doc. 45-3).

[147] *Id.* (citing Rec. Doc. 62-3, Rec. Doc. 45-2, Rec. Doc. 45-3).

[148] *Id.* (citing Rec. Doc. 62-3, Rec. Doc. 45-2, Rec. Doc. 45-3).

[149] *Id.* (citing Rec. Doc. 62-3, Rec. Doc. 45-2, Rec. Doc. 45-3).

[150] *Id.* (citing Rec. Doc. 62-3, Rec. Doc. 45-2, Rec. Doc. 45-3).

[151] *Id.* at 5 (citing Rec. Doc. 62-3).

[152] *Id.* (citing Rec. Doc. 62-3, Rec. Doc. 45-2).

### III. Law and Analysis

#### A.    Legal Standard for Motion for Summary Judgment under Rule 56

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[153] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[154] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[155] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[156]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[157] Where the non-moving party bears the burden of proof at trial, as here, the party moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[158] Thereafter, if the moving party satisfies its initial burden, the burden shifts to the non-moving party to "identify specific evidence in the

---

[153] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)*; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[154] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[155] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[156] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[157] *Celotex,* 477 U.S. at 323.

[158] *Id.* at 325.

record, and articulate" precisely how that evidence supports his claims.[159] In doing so, the non-moving party may not rest upon mere allegations or denials in his pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[160] A party seeking to establish that a fact is genuinely disputed must support such an assertion by reference to "materials in the record, including depositions, documents . . . affidavits or declarations . . . admissions, interrogatory answers, or other materials."[161] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[162] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[163]

## B. *Applicable Law on the First Amendment*

The First Amendment provides that Congress shall not make laws abridging the freedom of speech.[164] In *Tinker v. Des Moines Independent Community School District, et al.*, the Supreme Court held that students do not forfeit their First Amendment rights to freedom of speech and expression at school.[165] However, the First Amendment "does not provide students absolute rights

---

[159] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[160] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[161] Fed. R. Civ. P. (c)(1).

[162] *Little*, 37 F.3d at 1075.

[163] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

[164] U.S. Const. amend. I.

[165] *Tinker v. Des Moines Indep. Comm. Sch. Dist., et al.*, 393 U.S. 503, 506 (1969).

to such freedoms, and those rights must be tempered in the light [*sic*] of a school official's duty to, *inter alia*, 'teach[] students the boundaries of socially appropriate behavior,' and 'protect those entrusted to their care.'"[166] "Therefore, because 'the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings,' certain speech, which would be protected in other settings, might not be afforded First Amendment protection in the school setting."[167] Under the standard set forth in *Tinker*, a student "may express his opinions . . . if he does so without materially and substantially interfer[ing] with the requirements of appropriate discipline in the operation of the school."[168] "Put another way, conduct by a student, in class or out of it, which for any reason . . . materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized [.]"[169]

The Fifth Circuit has held the standard established in *Tinker* "can be satisfied by either showing a disruption has occurred or by showing demonstrable factors that would give rise to *any reasonable forecast* by the school administration of substantial and material disruption.'"[170] The Supreme Court has revisited the issue of student speech "on several occasions, each time carving out narrow exceptions to the general *Tinker* standard based on certain characteristics or content of the speech."[171] In *Morse v. Frederick*, the Supreme Court considered whether a school infringed upon a student's First Amendment right of free speech when it disciplined the student for holding

---

[166] *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 389 (5th Cir. 2015) (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681 (1986); *Morse v. Frederick*, 551 U.S. 393, 408 (2007)).

[167] *Id.* at 390 (quoting *Fraser*, 478 U.S. at 682).

[168] *Id.* (quoting *Tinker*, 393 U.S. at 513) (internal quotations omitted).

[169] *Id.* (citing *Tinker*, 393 U.S. at 513).

[170] *Id.* (quoting *Shanley v. N.E. Indep. Sch. Dist., Bexar Cnty., Tex.*, 462 F.2d 960, 974 (5th Cir. 1972)).

[171] *Id.* (citing *Morse v. Frederick*, 551 U.S. 393, 408 (2007); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988); *Fraser*, 478 U.S. at 685).

up a banner that stated "BONG HITS 4 JESUS" at a school-sponsored event.[172] The Court held

that the principal of the school could "consistent with the First Amendment, restrict student speech

at a school event, when that speech is reasonably viewed as promoting illegal drug use."[173] In

reaching its conclusion, the Court recognized that preventing drug use by school children is an

"important—indeed, perhaps compelling interest."[174] Thus, the "special characteristics of the

school environment, and the governmental interest in stopping student drug abuse . . . allow

schools to restrict student expression that they reasonably regard as promoting illegal drug use."[175]

## C.     *Applicable Law on the Fourth Amendment*

The Fourth Amendment establishes the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."[176]   In *New Jersey v.

T.L.O.*, the Supreme Court held that school officials need not obtain a warrant before searching a

student who is under their authority.[177] Rather, the Supreme Court held that the legality of a search

of a student should depend on the reasonableness of the search, under all of the circumstances.[178]

In determining the reasonableness of a search of a student, the Supreme Court held that the search:

(1) must be "justified at its inception" by the presence of "reasonable grounds for suspecting that

the search will turn up evidence that the student has violated or is violating either the law or the

---

[172] 551 U.S. at 397–98.

[173] *Id.* at 403.

[174] *Id* at 406 (quoting *Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 661 (1995) (internal quotation marks omitted)).

[175] *Id.* at 407 (quoting *Tinker*, 393 U.S. at 506) (internal quotation marks omitted)).

[176] U.S. Const. amend. IV.

[177] 459 U.S. 325, 340 (1985).

[178] *Id.* at 341. *See also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (recognizing that the Supreme Court has applied a standard of reasonableness rather than probable cause in the school context) (internal citation omitted).

rules of the school;"[179] and (2) must be "permissible in scope" such that "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction."[180] The Fifth Circuit has held that "[s]tudents at school have a significantly lesser expectation of privacy in regard to the temporary 'seizure' of their persons than does the general population."[181]

## D.     Applicable Law on the Fifth Amendment

The Fifth Amendment establishes that no person "shall be compelled in any criminal case to be a witness against himself."[182] In *Miranda v. Arizona*, the Supreme Court held that the statements given by a defendant during a custodial interrogation are inadmissible at trial unless, prior to questioning, the suspect "[is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."[183] As the Fifth Circuit has recognized, "*Miranda* warnings must be administered prior to 'custodial interrogation.'"[184] "Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody.'"[185] To determine

---

[179] *Id.* at 342.

[180] *Id.* The Court notes that Plaintiffs also cite to the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014). In *Riley*, the Supreme Court simply held that a cellphone could not be searched without a warrant *incident to arrest* but did not address the issue of searches of cellphones in school. *See id.* at 2493. Moreover, *Riley* does not create a blanket prohibition on warrantless searches of cellphones in all circumstances, as illustrated by the Fifth Circuit's recent decision upholding a warrantless search of a cellphone at a border crossing. *United States v. Escarcega*, No. 15-51090, 2017 WL 1380555, at *1 (5th Cir. Apr. 17, 2017) (*per curiam*).

[181] *Id.*

[182] U.S. Const. amend. V.

[183] 384 U.S. 436, 444 (1966).

[184] *U.S. v. Coleman*, 610 F. App'x 347, 353 (5th Cir. 2015) (*per curiam*) (citing *U.S. v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (*en banc*)).

[185] *U.S. v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015) (quoting *U.S. v. Salinas*, 543 F. App'x 458, 462 (5th Cir. 2013)).

whether a suspect was in custody for *Miranda* purposes, a court must "examine all of the circumstances surrounding the interrogation."[186] A suspect's age may be considered in conducting the custody analysis, though a child's age will not necessarily be "a determinative, or even a significant, factor in every case."[187]

A plaintiff may not base a Section 1983 claim on a *Miranda* violation alone, as the "prophylactic *Miranda* warnings are not themselves rights protected by the constitution but [are] instead measures to insure that the right against compulsory self-incrimination is protected."[188] In *Chavez v. Martinez*, the Supreme Court held that a police officer's alleged coercive questioning of a plaintiff did not violate the self-incrimination clause of the Fifth Amendment, absent the use of the plaintiff's compelled statements in a criminal case against him.[189] The Fifth Circuit has likewise held that the failure to give a suspect his *Miranda* warnings does not "in and of itself, amount to a constitutional violation."[190] Rather, potential constitutional violations occur "only upon the admission of unwarned statements into evidence at trial."[191] At that point, "[t]he exclusion of unwarned statements . . . is a complete and sufficient remedy for any perceived *Miranda* violation."[192]

---

[186] *Stansbury v. California*, 511 U.S. 318, 322 (1994).

[187] *J.D.B. v. California*, 564 U.S. 261, 277 (2011) (considering appeal of minor who had been charged in juvenile court and had unsuccessfully moved to suppress his statements on the basis that he had been interrogated by police and school administrators without the issuance of a *Miranda* warning).

[188] *U.S. v. Smith*, 7 F.3d 1164, 1170 (5th Cir. 1993) (quoting *Duckworth v. Eagan*, 492 U.S. 195 (1989) (internal quotation marks omitted)). *See also U.S. v. Patane*, 542 U.S. 630, 636, 641 (2004).

[189] 538 U.S. 760, 772–73 (2003) (holding that "the absence of a 'criminal case' in which [the plaintiff] was compelled to be a 'witness' against himself defeats his core Fifth Amendment claim"). While the *Chavez* plurality did not define exactly when a criminal case commences, the Supreme Court determined that at the very least, it requires "the initiation of a legal proceeding." *Id.* at 766–67.

[190] *See Smith*, 7 F.3d at 1170.

[191] *Patane*, 542 U.S. at 641.

[192] *Id.* at 641–42 (citing *Chavez v. Martinez*, 538 U.S. 760, 790 (2003) (internal quotation marks omitted)).

## E. Applicable Law on Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."[193] The right to an education, once extended by the state, constitutes a property interest protected by the Due Process Clause of the Fourteenth Amendment, and "a State 'may not withdraw that right on grounds of misconduct absent [] fundamentally fair procedures to determine whether the misconduct has occurred.'"[194] As to the procedural due process required, in the case of shorter suspensions from school, the Supreme Court has held that a student is entitled to "oral or written notice of the charges against him" and "an explanation of the evidence the authorities have and an opportunity to present his side of the story."[195] For longer suspensions or expulsions, the Supreme Court noted that more formal procedures may be required.[196] Considering the standard set by the Supreme Court, the Fifth Circuit has found that where a student is at risk of being deprived of an alternative education, and therefore at risk of being excluded from public education entirely, he or she is entitled to notice and hearing before being deprived of an alternative education.[197]

## F. Applicable Law on Substantive Due Process

To prevail on a substantive due process claim, a plaintiff must first establish that he held a constitutionally protected right or property interest to which the Fourteenth Amendment's due process protection applies.[198] As noted *supra*, the right to an education, once extended by the state,

---

[193] U.S. Const. amend. XIV.

[194] *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011) (citing *Goss v. Lopez*, 419 U.S. 565, 574 (1975)).

[195] *Id.* at 581.

[196] *Id.* at 584.

[197] *Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 394, 399 (5th Cir. 2011).

[198] *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000).

constitutes a property interest.[199] Once the right has been established, the Court must consider whether the denial of the right is rationally related to a legitimate government interest.[200] "Government action comports with substantive due process if the action is rationally related to a legitimate governmental interest."[201] "Protection against governmental arbitrariness is at the core of due process, including substantive due process, but only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense; the cognizable level of executive abuse is that which shocks the conscience."[202]

The Fifth Circuit has recognized that "[a] student's transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest."[203] The Fifth Circuit has found that "[t]his rule is consistent with *Goss*'s directive that, where state law creates an entitlement to public education, it is a student's 'total exclusion from the educational process for more than a trivial period' that constitutes a deprivation of protected property and liberty interests subject to due process constraints."[204] The Fifth Circuit has also recognized that Louisiana law provides, as a general rule, "that when a child is suspended

---

[199] *Goss*, 419 U.S. at 579.

[200] *Simi Inv. Co.,* 236 F.3d at 249.

[201] *FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). *See also Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990) (citing *Woodard v. Los Fresnos Ind. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984) (recognizing that corporal punishment in schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive of learning"); *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000).

[202] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (internal quotation marks omitted).

[203] *Harris*, 635 F.3d at 690 (citing *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26–27 (5th Cir. 1997)). *See also Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 394 (5th Cir. 2011) (internal citations omitted) ("This court has consistently held that a student who is removed from her regular public school, but is given access to an alternative education program, has not been denied her entitled to public education.").

[204] *Swindle*, 655 F.3d at 394 (citing *Goss*, 419 U.S. at 576).

or expelled, [he] is not automatically deprived of all further public educational benefits."[205] Rather, a student generally remains "under the supervision of the governing authority of the city, parish, or local public school system taking such action using alternative education programs."[206]

## G. *Immunity from Suit for School Board Members Acting as Adjudicators in the School Discipline Context*

In *Wood v. Strickland*, the Supreme Court recognized that school board members "function at different times in the nature of legislators and adjudicators in the school disciplinary process."[207] The Supreme Court further recognized that "[s]chool board members, among other duties, must judge whether there have been violations of school regulations and, if so, the appropriate sanctions for the violations. Denying any measure of immunity in these circumstances 'would contribute not to principled and fearless decision-making but to intimidation.'"[208] After recognizing that school board members acting in their capacity as adjudicators should be entitled to some form of immunity, the Supreme Court concluded that board members acting as adjudicators are to be protected by qualified, rather than absolute, immunity.[209]

Specifically, the Court concluded that "absolute immunity would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations."[210] Thus, in the "specific context of school discipline," the

---

[205] *Swindle*, 655 F.3d at 395.

[206] *Id.* (citing La. Rev. Stat. § 17:416.2(A)(1))

[207] *Wood v. Strickland*, 420 U.S. 308, 319 (1975).

[208] *Id.* (quoting *Pierson v. Ray*, 386 U.S. 547, 548 (1967)).

[209] *Id.*

[210] *Id.* at 320. *See also Cleavinger v. Saxner*, 474 U.S. 193, 204–205 (1985).

Court held that a school official could be liable under Section 1983 only "if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student."[211]

## H.    *Legal Standard on Qualified Immunity*

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[212] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[213] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[214] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[215]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[216] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[217] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was

---

[211] *Id.* at 322.

[212] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[213] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[214] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[215] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[216] 533 U.S. 194 (2001).

[217] *Id.* at 201.

unlawful in the situation he confronted."[218] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[219]

## I.    *Analysis*

In the motion for summary judgment, Movants request summary judgment on all of Plaintiffs' claims against them.[220] Specifically, Movants argue: (1) that they are entitled to summary judgment to the extent that Plaintiffs claim they are liable in their official capacities under 42 U.S.C. § 1983 because Plaintiffs have also sued the government entity for which they are employed; (2) that they are entitled to summary judgment on Plaintiffs' claims against them personally under 42 U.S.C. § 1983, as Plaintiffs have not pointed to evidence to raise a genuine dispute of material fact to demonstrate that they are liable; and because they are entitled to qualified immunity; and (3) that Movants are entitled to summary judgment on any state law claims against them, or the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.[221] In opposition to the motion, without pointing to any evidence in the record but providing two affidavits from Plaintiffs, M.D. and M.D.'s mother, Plaintiffs argue that the motion for summary judgment should be denied, as multiple "justiciable issues of triable facts" exist.[222] The Court will address the parties' arguments in turn.

---

[218] *Id.* at 202.

[219] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[220] Rec. Doc. 62 at 1.

[221] Rec. Doc. 62-1 at 7, 12, 14, 19.

[222] Rec. Doc. 69 at 1.

### 1. Whether Movants are Entitled to Summary Judgment on Plaintiffs' Claims under Section 1983 against the Individual Movants in their Official Capacities

Movants request summary judgment on Plaintiffs' claims against the individual Movants in their official capacities under Section 1983.[223] The Supreme Court and Fifth Circuit have both recognized that suits against a public official in his official capacity "generally represent another way of pleading an action against an entity of which an officer is an agent."[224] "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[225] The Fifth Circuit has further concluded that district courts may properly dismiss claims against municipal officers in their official capacities when they are duplicative of claims against the governmental entities themselves.[226] Here, Plaintiffs have sued both the individual Movants, in their official capacities, and the School Board, and Plaintiffs have not set forth any argument or evidence as to why both the claims against the individual Movants and the government entity should be maintained.[227] Because "it is proper to dismiss allegations against municipal officers in their official capacities

---

[223] Rec. Doc. 62 at 1. The Court notes that Movants request summary judgment "dismissing all claims of the Plaintiffs . . . against the Defendants" but do not offer specific argument in the motion as to why they are entitled to summary judgment on the claims against the individual Movants in their official capacities under Section 1983.

[224] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).

[225] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[226] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves.") (citing *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996)). *See e.g.*, *Moton v. Wilkinson*, No. 08-1356, 2009 WL 498487, at *1 (E.D. La. Feb. 26, 2009) (Vance, J.) (noting that the Fifth Circuit has generally held that a plaintiff cannot maintain an action against an employer and its agent in his official capacity in other contexts, and that this principle also applies to suits against a municipality and its officers) (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002); *Romero*, 256 F.3d at 355; *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999)).

[227] Rec. Doc. 15 at 5.

when the allegations duplicate claims against the governmental entity itself,"[228] and the School Board has received notice and an opportunity to respond, Movants are entitled to summary judgment on Plaintiffs' claims against the individual Movants in their official capacities under Section 1983.[229]

> ## 2. Whether Movants are Entitled to Summary Judgment on Plaintiffs' Claims under Section 1983 against the Individual Movants in their Personal Capacities

As noted above, Plaintiffs' amended complaint alleges that they are suing the individual Movants in both their individual and official capacities.[230] Movants argue that Plaintiffs' claims under Section 1983 against the individual Movants in their personal capacities should be dismissed, as Plaintiffs can point to no evidence in the record to demonstrate that Movants violated Plaintiffs' constitutional rights, and furthermore, that the individual Movants are entitled to qualified immunity.[231] In opposition, Plaintiffs argue that there remain facts in dispute and that the individual Movants are liable to Plaintiffs.[232] As noted *supra*, Movants have identified the following claims for relief under Section 1983: (1) First Amendment claims against Tridico, Astugue, and Deputy Gerchow;[233] (2) Fourth Amendment claims against all named Defendants;

---

[228] *Thompson v. Connick*, 578 F.3d 293, 297 n.4 (5th Cir. 2009), *rev'd on other grounds*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); *see e.g.*, *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, No. 12-2202, 2014 WL 1512001, at *9 (E.D. La. Mar. 26, 2014) (Fallon, J.); *Derischebourg v. Clark*, No. 15-1712, 2016 WL 98617, at *8 (E.D. La. Jan. 8, 2016) (Africk, J.) ("This Court has previously dismissed official-capacity claims against officers of an entity which were redundant of other claims in a lawsuit.").

[229] *See generally Section 1983 Litigation* (3d ed.) 2014 ("[W]hen a § 1983 complaint asserts a claim against a municipal entity and municipal official in her official capacity, federal district courts routinely dismiss the official capacity claim as duplicative or redundant.").

[230] Rec. Doc. 15 at 2.

[231] Rec. Doc. 62-1 at 14, 23.

[232] Rec. Doc. 69 at 1–2.

[233] Deputy Gerchow has already been dismissed from this action. *See* Rec. Doc. 81.

(3) Fifth and Fourteenth Amendment substantive and procedural due process claims for relief against all named Defendants; and (4) Fourteenth Amendment claims against all named Defendants.[234] Plaintiffs have not objected to Movants' characterization of their claims. The Court will address the parties' arguments in turn to determine whether Movants are entitled to summary judgment on the claims against the individual Movants under Section 1983 in their personal capacities.

### a. First Amendment

Movants argue that there is no evidence to show that any of the individual Movants violated Plaintiffs' First Amendment rights.[235] Because Plaintiffs have not alleged facts or pointed to any evidence that would support a claim for violation of the First Amendment, Movants contend that Plaintiffs' claims for violation of the First Amendment against Tridico and Astugue in their individual capacities should be dismissed.[236] Additionally, Movants argue that Tridico and Astugue are entitled to qualified immunity.[237] In opposition, without citing to any evidence or authority, Plaintiffs argue that Tridico and Astugue searched the cellphone that was in M.D.'s possession and that the cellphone "is clearly protected under the First Amendment."[238] Plaintiffs appear to allege in the amended complaint that the information on the cellphone in M.D.'s possession was constitutionally protected by the First Amendment.[239] In M.D.'s affidavit, which Plaintiffs attach to their opposition, M.D. asserts that after he unlocked the cellphone in his

---

[234] Rec. Doc. 62-1 at 2–3.

[235] *Id.* at 4.

[236] *Id.* at 5.

[237] *Id.* at 17.

[238] Rec. Doc. 69 at 2.

[239] Rec. Doc. 15 at 22.

possession, he later returned to Tridico's office and discovered that "someone had printed out a series of eight text messages, none of which had occurred that day, and none were exchanged on school grounds during school hours."[240]

As noted *supra*, the Supreme Court has held that students do not forfeit their First Amendment rights to freedom of speech and expression at school.[241] However, the First Amendment "does not provide students absolute rights to such freedoms, and those rights must be tempered in the light of a school official's duty to, *inter alia*, 'teach[] students the boundaries of socially appropriate behavior,' and 'protect those entrusted to their care.'"[242] Moreover, in *Morse v. Frederick*, the Supreme Court held that the "special characteristics of the school environment, and the governmental interest in stopping student drug abuse . . . allow schools to restrict student expression that they reasonably regard as promoting illegal drug use."[243]

Here, Plaintiffs appear to contend that the information on the cellphone in M.D.'s possession was constitutionally protected by the First Amendment and that Tridico and Astugue violated Plaintiffs' rights to freedom of speech under the First Amendment by viewing text messages on the cellphone and by considering the information in recommending disciplinary action against M.D. As an initial matter, Plaintiffs do not allege facts indicating in what manner and to what extent M.D.'s right to free speech was restricted. Even assuming that Tridico and Astugue did limit M.D.'s speech in some way, however, the Supreme Court has made clear that

---

[240] Rec. Doc. 69-3 at 2.

[241] *Tinker v. Des Moines Indep. Comm. Sch. Dist., et al.*, 393 U.S. 503, 506 (1969).

[242] *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 389 (5th Cir. 2015) (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681 (1986); *Morse v. Frederick*, 551 U.S. 393, 408 (2007)).

[243] 551 U.S. at 407.

students do not have unfettered rights to free speech under the First Amendment.[244] The uncontroverted evidence in the record here is that it was a violation of School Board policy for a student to possess a phone at school and that Tridico had received information from another student indicating that M.D. was involved in the purchase or sale of a controlled dangerous substance.[245] Plaintiffs have not shown that M.D. had a right under the First Amendment to have a cellphone on a school campus in violation of school policy, or that his communications on such a cellphone are entitled to protections under the First Amendment. Thus, Plaintiffs have not pointed to sufficient evidence to create a genuine dispute of material fact as to whether Tridico and Astugue violated a right of Plaintiffs under the First Amendment.

Moreover, even assuming that Tridico and Astugue did violate a right of Plaintiffs under the First Amendment by looking at text messages on the cellphone, Plaintiffs have cited to no authority, and the Court has found none, demonstrating that it was clearly established at the time of Tridico and Astugue's actions that viewing the contents of a cellphone possessed by a student who is suspected of drug infractions at school constitutes a violation of a right under the First Amendment. As stated above, a constitutional right must be clearly established in order to defeat a defense of qualified immunity.[246] When deciding whether a right allegedly violated was "clearly established," the Court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what he was doing violated the law.[247] As noted *supra*, the Supreme Court has held that school officials may regulate student speech

---

[244] *Tinker*, 393 U.S. at 506.

[245] Rec. Doc. 62-3 at 2.

[246] *See McClendon*, 305 F.3d at 323; *Saucier*, 533 U.S.at 207–208.

[247] *May v. Strain*, 55 F.Supp.3d 885, 897 (E.D. La. 2014) (Brown, J.) (citing *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2014)).

reasonably regarded as promoting illegal drug use.[248] Because Plaintiffs have not pointed to sufficient evidence or authority to demonstrate that Tridico and Astugue's alleged conduct was unambiguously prohibited under clearly established law, Tridico and Astugue are entitled to qualified immunity on Plaintiffs' claims against them for violations of the First Amendment.

### b. Fourth Amendment

Movants argue that Plaintiffs' claims against the individual Movants for violation of the Fourth Amendment is without merit and should be dismissed.[249] In particular, Movants argue that there was a reasonable basis for the search of M.D. and the cellphone in his possession and that there was no seizure of M.D. in this case such that the Fourth Amendment would be implicated.[250] In opposition, Plaintiffs, without citing to evidence in the record, argue that "Tridico, Astugue and Darouse, *et al.*" used Deputy Gerchow "as the muscle" to detain M.D. for long periods and that they unlocked the cellphone in M.D.'s possession, even though there were no drugs found on M.D.'s person.[251] Plaintiffs appear to allege in the amended complaint that Tridico and Astugue violated the Fourth Amendment by searching and questioning M.D. and by searching the cellphone in M.D.'s possession.[252]

Movants present evidence that the alleged searches in this case occurred in response to information received by Tridico from another student at M.D.'s school that M.D. was involved in the purchase or sale of a "controlled dangerous substance."[253] By contrast, Plaintiffs offer no

---

[248] *Morse*, 551 U.S. at 407.

[249] Rec. Doc. 62-1 at 5.

[250] *Id.* at 6–7.

[251] Rec. Doc. 69 at 2, 4–5.

[252] Rec. Doc. 15 at 13–16.

[253] Rec. Doc. 62-3 at 2.

evidence challenging this assertion. The Court notes that Plaintiffs attach the affidavits of M.D. and M.D.'s mother to their opposition memorandum but do not articulate how the affidavits create a genuine dispute of material fact as to Tridico and Astugue's personal involvement in any alleged deprivation of Plaintiffs' Fourth Amendment rights.[254] In M.D.'s affidavit, he asserts the following as to the alleged search and investigation of M.D. on January 8, 2015: (1) Tridico stated he was looking for drugs and searched M.D.'s person and effects in the presence of Deputy Gerchow but found no drugs; (2) M.D. was "subject to rigorous interrogation" by Tridico and that M.D. was afraid that Tridico was going to harm him or have him arrested; (3) Tridico and Astugue demanded that M.D. unlock the cellphone in his possession, and M.D. eventually unlocked it because he believed that he would never be permitted to leave or that he would be arrested; and (4) later that day, when M.D. returned to Tridico's office, "someone had printed out a series of eight text messages."[255]

As noted *supra*, the Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment."[256] Even assuming the truth of the assertions in M.D.'s affidavit, Plaintiffs have not pointed to sufficient evidence to raise a genuine issue of material fact that suggests: (1) Movants' conduct violated Plaintiffs' Fourth Amendment rights; and (2) Movants' actions were objectively unreasonable in light of the law that was clearly

---

[254] Rec. Docs. 69-2, 69-3.

[255] Rec. Doc. 69-3 at 1–2. The Court notes that M.D.'s mother's assertions in her affidavit regarding Tridico and Astugue's alleged conduct, as reported by M.D., are based on hearsay and are not based on personal knowledge. As such, M.D.'s mother's assertions based on statements made by M.D. to her do not constitute proper summary judgment evidence. Moreover, they are essentially identical to M.D.'s statements about Tridico and Astugue's alleged conduct. *See* Rec. Doc. 69-2 at 1–2. The Court would therefore reach the same conclusion regardless of whether it considered the assertions regarding Tridico and Astugue's conduct towards M.D. in M.D.'s mother's affidavit.

[256] *Tyler*, 426 F. App'x at 307 (internal citation omitted); *Lawrence*, 276 F.3d at 197.

established at the time of the incident.[257]

The Fourth Amendment establishes the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[258] As to M.D.'s assertion that Tridico searched his person for drugs in the presence of a school resource officer, the Supreme Court held in *New Jersey v. T.L.O.*, that a warrant is not required for searches of students in schools by school officials.[259] Rather, the Supreme Court held that the legality of a search of a student depends on the reasonableness of the search, under all the circumstances.[260] The Court notes that the Fifth Circuit has not spoken directly to the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with law enforcement officers. However, the Eighth Circuit has held that the reasonableness standard articulated by the Supreme Court in *T.L.O.*, not probable cause, applies where a school official searched a student in conjunction with a law enforcement officer acting as a school liaison officer.[261] This Court finds the Eighth Circuit's rationale to be persuasive and applies it here.

Therefore, even assuming the truth of M.D.'s assertions that Tridico searched M.D.'s person and effects in the presence of a school resource officer, the uncontroverted evidence in the record indicates that such a search was reasonable, as Movants have pointed to evidence that another student informed Tridico that M.D. was involved in the purchase or sale of a controlled

---

[257] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002); *see Saucier*, 533 U.S. at 207–208.

[258] U.S. Const. amend. IV.

[259] 459 U.S. 325, 340 (1985).

[260] *Id.* at 341.

[261] *Shade v. City of Farmington*, 309 F.3d 1054, 1060 (8th Cir. 2002). A court in the Southern District of Illinois likewise has held that a search by a deputy acting as a school resource officer was governed by the reasonableness standard enunciated in *T.L.O.* and not be the higher probable cause standard. *See Wilson ex rel. Adams v. Cahokia Sch. Dist. No. 187*, 470 F.Supp.2d 897, 910 (S.D. Ill. 2007) (reviewing cases and finding that "the weight of the authority" holds that a search of a student on school grounds by a school resource officer should be subject to the reasonableness standard).

substance at school.[262] Plaintiffs have pointed to no evidence contradicting the reason for the search of M.D. or creating a genuine dispute of material fact that it was unreasonable under the standard established in *T.L.O.* for Tridico to search M.D. for drugs or view his cellphone for evidence of the purchase or sale of drugs.[263] Moreover, even if such conduct did constitute a constitutional violation, Plaintiffs have pointed to no authority that such conduct was objectively unreasonable in light of clearly established law.[264]

In M.D.'s affidavit, M.D. asserts that Astugue and Tridico threatened M.D. to unlock the cellphone in his possession.[265] However, M.D. does not describe the actions taken by Astugue and Tridico or why those alleged actions were perceived as a threat.[266] Therefore, Plaintiffs have not asserted sufficient facts to demonstrate that the search was unreasonable under *T.L.O.* Even assuming the accuracy of Plaintiffs' interpretation of the facts, due to the same factual and evidentiary deficiencies, Plaintiffs have not demonstrated that Tridico and Astugue's conduct in searching the cellphone in M.D.'s possession without M.D.'s consent violated a constitutional right or that such conduct was objectively unreasonable in light of clearly established law, as required to overcome Tridico and Astugue's qualified immunity defense.[267]

The Court notes that Plaintiffs cite several cases outside of the Fifth Circuit holding that certain searches conducted by school officials were unreasonable. This Court is bound by the law

---

[262] Rec. Doc. 62-1 at 6 (citing Rec. Doc. 45-2).

[263] *See T.L.O.*, 459 U.S. at 340.

[264] *See McClendon*, 305 F.3d at 323.

[265] *See* Rec. Doc. 69-3 at 2.

[266] *See* Rec. Doc. 69-3 (M.D.'s affidavit in which he asserts: "I initially rejected the demands to unlock my father's cellphone, but with Tridico, Astugue, and Deputy Gerchow threatening me, I eventually capitulated because I believed that I would never be permitted to leave or that I would be arrested by Gerchow).

[267] *See McClendon*, 305 F.3d at 323; *Saucier*, 533 U.S.at 207–208.

of the Fifth Circuit. In a case within the Fifth Circuit, *J.W. v. Desoto County School District*, a district court in the Northern District of Mississippi granted the individual school employee defendants' motion to dismiss and/or for summary judgment where a school employee confiscated the phone of a student who was seen using the phone in class in violation of school policy.[268] After confiscating the phone, the school employees then looked at pictures on the phone.[269] The student was suspended for having gang-related pictures on his cellphone.[270] Reviewing the relevant case law, the *J.W.* court found that the search was reasonable under Supreme Court precedent and that, "more importantly," it was not clearly established that such a search violated the Fourth Amendment.[271]

Plaintiffs cite to two district court cases from outside the Fifth Circuit in which the courts determined at the motion to dismiss stage that school employees' searches of students' cellphones were not reasonable on the face of the complaint under the standard set forth in *T.L.O.*[272] However, those decisions are non-binding and occurred at the motion to dismiss stage where it could not be determined that the searches were reasonable on the face of the complaint. In the instant case, which is at the summary judgment stage, Movants have pointed to uncontroverted evidence in the record that the search of M.D. occurred in response to a specific allegation of M.D.'s purchase,

---

[268] No. 09-1055, 2010 WL 4394059, *1 (N.D. Miss. Nov. 1, 2010).

[269] *Id.*

[270] *Id.*

[271] *Id.* at *4–5.

[272] *See Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F.Supp.3d 721, 725 (E.D. Va. 2014) (finding that the facts as alleged in the complaint did not indicate that the search of the cellphone was reasonable but noting that the defendant school employee could have had reasonable cause for the search and could bring forth such evidence on a motion for summary judgment); *Klump v. Nazareth Area Sch. Dist.*, 425 F.Supp.2d 622, 630 (E.D. Pa. 2006) (denying school employees' motion to dismiss where school employees were alleged to have seized a student's cellphone and used the student's cellphone to call other students to determine if they were violating the school's cellphone policy).

sale, and possession of a controlled dangerous substance reported to Tridico by another student.[273]

Plaintiffs also cite to a Sixth Circuit decision reversing a grant of summary judgment in favor of defendant school employees after finding that the search of a student's cellphone was not reasonable at its inception, because the defendant school employees had only general background knowledge of a student's drug use or depressive tendencies to justify the search of the student's cellphone.[274] By contrast, as noted *supra*, the uncontroverted evidence in the record in this case, at the summary judgment stage, is that M.D.'s cellphone was not searched pursuant to general background knowledge, but rather in relation to specific allegations of M.D.'s purchase, sale, and possession of drugs, which appears reasonable and certainly not in violation of clearly established law.[275]

The Court further notes that one commentator has argued that the unique characteristics of a cellphone should prompt reconsideration of the Supreme Court's decision in *T.L.O.* as applied to the search of cellphones in school.[276] However, the commentator also recognized that "[c]urrently, courts have allowed a warrantless search of a cell phone based on the original rule from *T.L.O.*"[277] This further supports the Court's conclusion that Tridico and Astugue's alleged

---

[273] *See* Rec. Doc. 62-3 at 2.

[274] *G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623 (6th Cir. 2013).

[275] Rec. Doc. 62-3 at 2. The Court notes that Plaintiffs also cite to the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014). However, in *Riley*, the Supreme Court simply held that a cellphone could not be searched without a warrant *incident to arrest*. *See id.* at 2493. As noted above, the standard applied to school searches on school grounds has been established by the Supreme Court in *T.L.O.* and is the reasonableness of the search, under all the circumstances. *See* 459 U.S. at 340. *Riley* does not create a blanket prohibition on warrantless searches of cellphones in all circumstances, as illustrated by the Fifth Circuit's recent decision upholding a warrantless search of a cellphone at a border crossing. *United States v. Escarcega*, No. 15-51090, 2017 WL 1380555, at *1 (5th Cir. Apr. 17, 2017) (*per curiam*).

[276] Ross Hoogstraten, *Implications on the Constitutionality of Student Cellphone Searches Following* Riley v. California, 24 Wm. & Mary Bill Rts. J. 879, 897.

[277] *Id.* (citing *J.W.*, 2010 WL 4394059, *1).

conduct, if established, did not violate a clearly established right under the Fourth Amendment.

When deciding whether a right allegedly violated was "clearly established," the Court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what he was doing violated the law.[278] "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar."[279] In this case, there is simply no controlling authority or "robust consensus of persuasive authority" prohibiting the search of student cellphones on school grounds such that Tridico and Astugue's conduct, as alleged by Plaintiffs, could be considered objectively unreasonable under clearly established law. Therefore, even assuming the truth of Plaintiffs' assertion that Tridico and Astugue searched the cellphone, Plaintiffs have not met their burden to overcome Tridico and Astugue's defense of qualified immunity.

Finally, the Court notes that it appears that Plaintiffs allege that the detention of M.D. for questioning by Tridico and Astugue violated the Fourth Amendment.[280] In opposition to the instant motion, Plaintiffs argue that M.D. was detained "for long periods."[281] The Court notes that in M.D.'s affidavit, M.D. asserts that he in fact returned to class twice over the course of the alleged questioning and search of M.D.[282] In *Milligan v. City of Slidell*, the Fifth Circuit held that students

---

[278] *May v. Strain*, 55 F.Supp.3d 885, 897 (E.D. La. 2014) (Brown, J.) (citing *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2014)).

[279] *Id.*

[280] *See* Rec. Doc. 15 at 13.

[281] Rec. Doc. 69 at 5.

[282] Rec. Doc. 69-3 at 1–2.

at school "have a significantly lesser expectation of privacy in regard to temporary 'seizure' of their persons than does the general population."[283] Thus, the Fifth Circuit noted that "it is not at all clear that [students] have some privacy right not to be summoned to and detained in a school official's office for questioning on matters of school discipline."[284]  In *Milligan*, the Fifth Circuit found that, even assuming such a right to not be detained by school personnel "exists at a low level," students' Fourth Amendment rights were not violated when they were called into a school official's office for questioning by police officers about a possible fight.[285]

In this case, given M.D.'s "lesser expectation of privacy" in the school environment, it appears that Tridico and Astugue's temporary detention of M.D. to question him regarding drug allegations was reasonable and therefore did not violate M.D.'s right to be free from unreasonable seizure under the Fourth Amendment. Even assuming that the temporary detention was a constitutional violation, Plaintiffs have not pointed to any authority, and the Court has found none, demonstrating that Tridico and Astugue's conduct in temporarily detaining M.D. for questioning regarding drug allegations was objectively unreasonable under clearly established law.

### c. *Fifth Amendment*

Movants argue that Plaintiffs' claims under the Fifth Amendment against Movants in their individual capacities should be dismissed, as Plaintiffs have not pointed to facts demonstrating a violation of the Fifth Amendment, and the individual Movants are entitled to qualified immunity.[286] In opposition to the motion, Plaintiffs argue that Tridico and Astugue forced M.D. to become a witness against himself and intimidated M.D. into signing fabricated statements in

---

[283] *Milligan v. City of Slidell*, 226 F.3d 652, 656 (2000).

[284] *Id.* at 655.

[285] *Id.* at 656.

[286] Rec. Doc. 62-1 at 23.

violation of the Fifth Amendment.[287] In M.D.'s affidavit, M.D. asserts that he was subjected to "rigorous interrogation" by Tridico and that Tridico and Astugue "kept badgering" M.D. and forced him to write out and sign two statements that they dictated but that were untrue.[288] In the amended complaint, Plaintiffs allege that Tridico and Astugue interrogated M.D. without administering a *Miranda* warning first.[289]

As noted *supra*, the Fifth Amendment establishes that no person "shall be compelled in any criminal case to be a witness against himself."[290] In *Miranda v. Arizona*, the Supreme Court held that the statements a defendant gives during a custodial interrogation are inadmissible at trial unless, prior to questioning, the suspect "[is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."[291] The Fifth Circuit has instructed that "*Miranda* warnings must be administered prior to 'custodial interrogation.'"[292] In *Chavez v. Martinez*, the Supreme Court held that a police officer's alleged coercive questioning of a plaintiff did not violate the self-incrimination clause of the Fifth Amendment, absent the use of the plaintiff's compelled statements in a criminal case against him.[293] Likewise, a plaintiff may not base a Section 1983

---

[287] Rec. Doc. 69 at 5.

[288] Rec. Doc. 69-3 at 1, 2. The Court notes that Plaintiffs produced an email in discovery in which M.D.'s mother asserts that M.D. was completely honest with the school disciplinary staff. *See* Rec. Doc. 44-4. Without citing to any evidence in the record, Plaintiffs deny that the email was ever written. Rec. Doc. 70-1 at 2.

[289] Rec. Doc. 15 at 8, 13, 22.

[290] U.S. Const. amend. V.

[291] 384 U.S. 436, 444 (1966).

[292] *U.S. v. Coleman*, 610 F. App'x 347, 353 (5th Cir. 2015) (*per curiam*) (citing *U.S. v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (*en banc*)).

[293] 538 U.S. 760, 772–73 (2003) (holding that "the absence of a 'criminal case' in which [the plaintiff] was compelled to be a 'witness' against himself defeats his core Fifth Amendment claim"). While the *Chavez* plurality did not define exactly when a criminal case commences, the Supreme Court determined that at the very least, it requires "the initiation of a legal proceeding." *Id.* at 766–67.

claim on a *Miranda* violation alone, as the "prophylactic *Miranda* warnings are not themselves rights protected by the constitution but [are] instead measures to insure that the right against compulsory self-incrimination is protected."[294] The Fifth Circuit has held that the failure to give a suspect his *Miranda* warnings does not "in and of itself, amount to a constitutional violation."[295] Rather, potential constitutional violations occur "only upon the admission of unwarned statements into evidence at trial."[296] At that point, "[t]he exclusion of unwarned statements . . . is a complete and sufficient remedy for any perceived *Miranda* violation."[297]

In this case, Plaintiffs argue that M.D.'s right against self-incrimination was violated, because he was forced to write out and sign a confession.[298] As noted *supra*, the only evidence presented by Plaintiffs in support of their opposition to the instant motion are the affidavits of M.D. and M.D.'s mother.[299] However, Plaintiffs do not explain how exactly the affidavits demonstrate a violation of the Fifth Amendment. The Court notes that M.D.'s affidavit contains an assertion that Tridico and Astugue "kept badgering" M.D. and forced him into signing an untrue statement.[300] As noted *supra*, the Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment."[301] Moreover, the nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some

---

[294] *U.S. v. Smith*, 7 F.3d 1164, 1170 (5th Cir. 1993) (quoting *Duckworth v. Eagan*, 492 U.S. 195 (1989) (internal quotation marks omitted)). *See also U.S. v. Patane*, 542 U.S. 630, 636, 641 (2004).

[295] *See Smith*, 7 F.3d at 1170.

[296] *Patane*, 542 U.S. at 641.

[297] *Id.* at 641–42 (citing *Chavez v. Martinez*, 538 U.S. 760, 790 (2003) (internal quotation marks omitted)).

[298] *See* Rec. Doc. 69 at 2; Rec. Doc. 69-3 at 2.

[299] Rec. Docs. 69-2, 69-3.

[300] *See* Rec. Doc. 69-3 at 2.

[301] *Tyler*, 426 F. App'x at 307 (internal citation omitted); *Lawrence*, 276 F.3d at 197.

metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[302]

Even assuming the truth of the conclusory assertions in the affidavit, the Fifth Circuit has held that "[p]roving that a confession was coerced requires showing that the confession resulted from coercive police conduct[.]"[303] In this case, Plaintiffs have pointed to no evidence that Tridico and Astugue were acting at the behest of law enforcement or that M.D.'s signed statements were the result of coercive police conduct.[304] Moreover, even if M.D.'s written statements are assumed to be involuntary, there is no evidence or allegation in the record that M.D. was ever criminally prosecuted or that any of M.D.'s statements were used against him in a criminal proceeding. As noted *supra*, it is not until compelled statements are used in a criminal case that a violation of the Fifth Amendment's self-incrimination clause occurs.[305] Accordingly, even where a suspect was alleged to have been subjected to coercive police questioning, the Supreme Court found no Fifth Amendment violation in the absence of criminal prosecution.[306]

The Court notes that Plaintiffs also argue that M.D. was questioned by school officials without issuance of a *Miranda* warning. Plaintiffs have pointed to no authority, and the Court has found none, that school officials must administer a *Miranda* warning before questioning a student regarding suspected disciplinary infractions at school. Even assuming that M.D. would have

---

[302] *Little*, 37 F.3d at 1075.

[303] *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003).

[304] M.D. asserts in his affidavit that Deputy Gerchow was present at some points during the questioning and search of M.D. and that Deputy Gerchow questioned him about drug use. *See* Rec. Doc. 69-3 at 2. However, M.D. does not assert in the affidavit, and Plaintiffs point to no evidence, that Deputy Gerchow was involved in any way in obtaining the written statements from M.D.

[305] *See Chavez*, 538 U.S. at 767.

[306] *Id.* at 766.

somehow been entitled to a *Miranda* warning before questioning, the failure to give a suspect *Miranda* warnings does not "in and of itself, amount to a constitutional violation."[307] Rather, potential constitutional violations occur "only upon the admission of unwarned statements into evidence at trial."[308] Plaintiffs cannot bring a Section 1983 claim on the basis of the failure to issue a *Miranda* warning to M.D., as Plaintiffs have neither alleged nor pointed to any evidence that M.D.'s statements were admitted into evidence during a criminal proceeding. Thus, Plaintiffs have failed to point to evidence to create a genuine dispute of material fact that Movants violated M.D.'s right against self-incrimination.

Even if Tridico and Astugue's alleged conduct in questioning M.D. without a *Miranda* warning and "badgering" and forcing him to sign statements did constitute a violation of the Fifth Amendment, Plaintiffs have not cited any authority that such conduct was objectively unreasonable under clearly established law such that Tridico and Astugue would not be entitled to qualified immunity. Indeed, the Court notes that the Sixth Circuit has held that a school official who was not acting at the behest of law enforcement did not violate the Fifth Amendment and was not required to administer *Miranda* warnings where the school official obtained a written statement from a student admitting that she gave an Adderall pill to another classmate, even though the statement was later given to a school resource officer and the student was ultimately charged in juvenile court with a trafficking violation.[309] Because Plaintiffs have not pointed to any evidence

---

[307] *See Smith*, 7 F.3d at 1170.

[308] *Patane*, 542 U.S. at 641.

[309] *S.E. v. Grant Cnty. Bd. of Ed.*, 544 F.3d 633, 641 (6th Cir. 2008). *See also Pollnow v. Glennon*, 594 F.Supp. 220, 224 (S.D.N.Y. 1984), *aff'd* , 757 F.2d 496 (2d Cir. 1985) (holding that a student questioned by school officials regarding an alleged assault was not entitled to a *Miranda* warning); *K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F.Supp.3d 356, 365 (M.D. Penn. 2014) (collecting cases and noting that students facing disciplinary action in public schools are not entitled to *Miranda* warnings); *Crawford v. Deer Creek Pub. Schools*, 228 F.Supp.3d 1262, 1270 (W.D. Okl. 2017) (finding no violation of student's Fifth Amendment right against self-incrimination where a principal obtained a written confession from a student admitting to sexual assault after the principal suggested

or authority that Tridico and Astugue's alleged conduct violated clearly established law under the Fifth Amendment, Tridico and Astugue are entitled to qualified immunity on Plaintiffs' claims for violation of M.D.'s right against self-incrimination under the Fifth Amendment.

### d. *Substantive Due Process*

Movants argue that Plaintiffs have not pointed to any evidence of a violation of substantive due process, as the evidence demonstrates that M.D. was offered ongoing education after he was expelled.[310] Plaintiffs do not directly respond to Movants' argument regarding their claim for violation of their substantive due process rights. In the amended complaint, Plaintiffs appear to allege that Defendants' disciplinary proceedings violated Plaintiffs' substantive due process rights.[311] As noted *supra*, to prevail on a substantive due process claim, a plaintiff must first establish that he held a constitutionally protected right or property interest to which the Fourteenth Amendment's due process protection applies.[312] The Fifth Circuit has recognized that "[a] student's transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest."[313] The Fifth Circuit has also recognized that Louisiana law provides, as a general rule, "that when a child is suspended or expelled, [he] is not automatically deprived of all further public educational benefits."[314]

Here, Movants have pointed to evidence that M.D. was provided with an alternative school

---

that such a confession would reduce his punishment and where student was put on long-term suspension).

[310] Rec. Doc. 62-1 at 10.

[311] Rec. Doc. 15 at 29.

[312] *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000).

[313] *Harris*, 635 F.3d at 690 (citing *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26–27 (5th Cir. 1997)). *See also Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 394 (5th Cir. 2011) (internal citations omitted) ("This court has consistently held that a student who is removed from her regular public school, but is given access to an alternative education program, has not been denied her entitled to public education.").

[314] *Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 395 (5th Cir. 2011).

setting such that he was not at risk of being deprived of a public education.[315] Plaintiffs have offered no evidence or argument to contradict Movants' evidence that M.D. was provided with an alternative educational setting. Accordingly, under Fifth Circuit precedent, because the uncontroverted evidence in the record demonstrates that M.D. was provided with an alternative school setting and was therefore not denied access to public education, Plaintiffs have not established that the expulsion of M.D. violated Plaintiffs' substantive due process rights.[316]

The Court notes that it also appears that Plaintiffs allege that Tridico and Astugue's search of the cellphone violated M.D.'s father's substantive due process rights.[317] However, the undisputed evidence demonstrates that the cellphone was returned to M.D.'s parent at the end of the school day during which he was questioned.[318]

Plaintiffs have not demonstrated that M.D.'s father had a constitutionally protected property right in not having the cellphone taken away from M.D., who had it on campus in violation of School Board policy. Moreover, even if Plaintiffs could demonstrate such a property interest, as noted *supra*, the Court must then consider whether the denial of that interest is rationally related to a legitimate government interest.[319] "Government action comports with substantive due process if the action is rationally related to a legitimate governmental interest."[320] "Protection

---

[315] *See* Rec. Docs. 62-4 at 2, 62-2 at 8.

[316] *Swindle*, 655 F.3d at 394.

[317] Rec. Doc. 15 at 21.

[318] *See* Rec. Docs. 62-3 at 4, 69-1 at 5.

[319] *Id.*

[320] *FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). *See also Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990) (citing *Woodard v. Los Fresnos Ind. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984) (recognizing that corporal punishment in schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive of learning"); *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000).

against governmental arbitrariness is at the core of due process, including substantive due process, but only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense; the cognizable level of executive abuse is that which shocks the conscience."[321] In this case, the conduct of Tridico and Astugue in temporarily seizing a cellphone in possession of a student who was being investigated regarding drug allegations cannot be said to be unrelated to a legitimate government interest or shock the conscience. Accordingly, Plaintiffs have failed to point to sufficient evidence to create a genuine dispute of material fact that they are entitled to relief on their claims for violation of their substantive due process rights.

### e. Procedural Due Process

Movants argue that the allegations and evidence in this case demonstrate that Plaintiffs received adequate notice and an opportunity to be heard and that they are therefore entitled to summary judgment on Plaintiffs' claims for violation of procedural due process.[322] Movants additionally argue that the hearing officers at M.D.'s expulsion hearings, individual Movants Darouse and Hennegan, are entitled to qualified immunity as adjudicators in the disciplinary process.[323] Additionally, Movants argue that it is unclear from the amended complaint and evidence what, if any, liability falls on Jabbia, as he was not involved in any of the disciplinary proceedings involving M.D.[324] In opposition, Plaintiffs argue, without citing to any evidence in the record, that Darouse is not entitled to qualified immunity, because he intentionally ignored due process obligations and told Plaintiffs incorrect information regarding the disciplinary hearings.[325]

---

[321] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (internal quotation marks omitted).

[322] Rec. Doc. 62-1 at 13.

[323] *Id.* at 14.

[324] *Id.* at 18–19.

[325] Rec. Doc. 69 at 3.

Plaintiffs further argue that Hennegan stepped out of his role as adjudicator when he told Plaintiffs not to listen to their attorney and to not file suit in court.[326] Plaintiffs do not address Movants' arguments regarding Jabbia in their opposition memorandum.

The evidence in the record demonstrates the following regarding the disciplinary process provided to Plaintiffs: (1) M.D. was suspended with a recommendation for expulsion after school personnel found that he had purchased and possessed a controlled substance;[327] (2) M.D.'s mother was contacted by Tridico and later by Astugue advising her that M.D. had been suspended;[328] (3) Plaintiffs were provided with a hearing before School Board Supervisor of Administration Darouse who found M.D. guilty of the use or possession of a controlled dangerous substance and recommended expulsion in accordance with state law;[329] and (4) Plaintiffs timely appealed the decision to the School Board during which M.D. was instructed by counsel to not answer any questions and the School Board voted to affirm the decision as to M.D.'s expulsion.[330]

As noted *supra*, in the case of shorter suspensions from school, the Supreme Court has held that a student is entitled to "oral or written notice of the charges against him" and "an explanation of the evidence the authorities have and an opportunity to present his side of the story."[331] For longer suspensions or expulsions, the Supreme Court noted that more formal procedures may be required.[332] Considering the standard set by the Supreme Court, the Fifth Circuit has found that

---

[326] *Id.*

[327] Rec. Doc. 62-2 at 2.

[328] Rec. Doc. 69-2 at 1.

[329] Rec. Doc. 69-2 at 3; Rec. Doc. 62-2 at 2, 5.

[330] Rec. Doc. 62-2 at 3, Rec. Doc. 69-2 at 3.

[331] *Goss*, 419 U.S. at 581.

[332] *Id.* at 584.

where a student is at risk of being deprived of an alternative education, and therefore at risk of being excluded from public education entirely, he or she is entitled to notice and hearing before being deprived of an alternative education.[333]  Considering the foregoing uncontroverted evidence that Plaintiffs were provided with notice of the charges against M.D., a hearing, and an appeal before the School Board and the uncontroverted evidence that M.D. was provided with an alternative education setting,[334] the Court finds that Plaintiffs have not demonstrated that Movants violated their constitutional rights to procedural due process.

The Court notes that M.D.'s mother states in her affidavit that at the initial hearing conducted by Darouse, he did not advise her that she "could have a lawyer, ask questions, provide evidence, examine witnesses or otherwise participate."[335] The affidavit further states that the "only evidence was the fabricated evidence and statements forced from M.D. which he repudiated" and that Darouse "already had the matter decided" and "pulled a signed ruling from his stack of papers affirming the suspension."[336] However, Plaintiffs have not pointed to any authority that Darouse was required to inform Plaintiffs that they could have a lawyer participate in the hearing, and indeed, the Fifth Circuit has held that plaintiffs are not entitled to "the technicalities of criminal procedure" in the context of school disciplinary hearings.[337]

Plaintiffs allege that Darouse pulled a prepared ruling from Darouse's stack of papers

---

[333] *Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 394, 399 (5th Cir. 2011).

[334] *See* Rec. Doc.

[335] Rec. Doc. 69-2 at 3.

[336] *Id.*

[337] *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 263 (5th Cir. 1985) (rejecting student's argument that a school board panel at a disciplinary hearing should not have considered evidence of student's drug activity at school because the student did not have an opportunity to confront and cross-examine witnesses). *See also Jenkins v. Louisiana State Bd. of Ed.*, 506 F.2d 992, 1000 (5th Cir. 1975) (holding that due process in the context of a school disciplinary hearing is "not to be equated with that essential to a criminal trial").

affirming the suspension and by doing so violated Plaintiffs' procedural due process rights and prevented Plaintiffs from receiving a meaningful hearing. However, Plaintiffs have not pointed to any evidence that Plaintiffs presented and that Darouse did not consider in the hearing. While Plaintiffs have not pointed to any evidence that they presented to Darouse at the hearing that allegedly was not considered or given proper weight, Movants have submitted evidence indicating that M.D. admitted at the hearing to purchasing a controlled substance and that Darouse also considered statements from M.D.'s mother, father, grandmother, and teachers.[338] Plaintiffs have not pointed to any evidence in the record or otherwise to contradict Defendants' evidence.

Finally, in her affidavit, M.D.'s mother asserts that Darouse provided her with an incorrect date for the appeal to the School Board.[339] As it is undisputed, however, that Plaintiffs ultimately filed a timely appeal, Plaintiffs have failed to demonstrate how this alleged conduct by Darouse violated Plaintiffs' right to procedural due process.

The Court further notes that M.D.'s mother also asserts in her affidavit that Jabbia "conducted the activities [at M.D.'s appeal to the School Board] and told [her] attorney that he had to sit down and shut up; that he could not comment, object, file evidence or examine or call any witnesses."[340] M.D.'s mother also asserts in her affidavit that at the appeal to the School Board Hennegan told her and her husband at the hearing that they should not pay attention to their attorney and should not file suit because the School Board "never lost a case."[341] Movants have submitted the affidavit of Darouse in which he asserts that Jabbia never participated in the

---

[338] Rec. Doc. 62-2 at 6 (Comments from the Expulsion Hearing).

[339] Rec. Doc. 69-2 at 3.

[340] *Id.*

[341] *Id.*

expulsion hearing.[342] Plaintiffs have the burden at the motion for summary judgment stage to come forward with evidence that Jabbia was in fact at or in some way participated in the appeal, *e.g.*, School Board hearing minutes or an affidavit from another witness at the hearing. The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[343]

Even assuming the truth of the assertions in M.D.'s mother's affidavit, however, Plaintiffs have failed to demonstrate what evidence her attorney would have presented at the appeal. Moreover, the Court finds that Plaintiffs have failed to demonstrate how Hennegan's comments to Plaintiffs that they should not file suit violated their procedural due process rights or interfered with Plaintiffs' ability to be heard at the appeal before the School Board. Indeed, the Court notes that the evidence demonstrates that Plaintiffs presented no new evidence to the School Board at the appeal even though they had the opportunity to do so.[344]

Accordingly, based on the foregoing, Movants are entitled to summary judgment on Plaintiffs' claims against the individual movants in their personal capacities for violations of procedural due process.

### f. Failure to Train

Movants argue that it is unclear from the amended complaint and evidence what, if any, liability falls on Folse, that the claims against him should be dismissed, and that Folse is entitled to qualified immunity.[345] In opposition to the motion, Plaintiffs argue that Folse failed to properly

---

[342] Rec. Doc. 62-2 at 4.

[343] *Little*, 37 F.3d at 1075.

[344] Rec. Docs. 62-2 at 3; 69-2 at 3.

[345] Rec. Doc. 62-1 at 18–19.

train and supervise Darouse, Tridico, and Astugue.[346] Plaintiffs further argue that Folse wrote letters to Plaintiffs approving what Darouse did at M.D.'s disciplinary hearing.[347]

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[348] Accordingly, the Fifth Circuit has determined that a supervisor may be held personally liable if there exists either: (1) "his personal involvement in the constitutional deprivation;" or (2) "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."[349] More specifically, to succeed on a failure to supervise or train claim, a plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[350]

Plaintiffs have not cited to any specific evidence in the record as to Folse's personal involvement in the alleged constitutional violations. In fact, the only evidence submitted by Plaintiffs in opposition to the motion, *i.e.* the affidavits of M.D.'s mother and M.D., do not mention Folse at all.[351] Plaintiffs argue in opposition, without citing to any specific evidence in the record, that Folse sent Plaintiffs letters "approving what Darouse had done to them and was obviously

---

[346] Rec. Doc. 69 at 3–4.

[347] *Id.* at 4.

[348] *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985) (*per curiam*)); *see also Smallwood v. New Orleans City*, No. 15-1887, 2016 WL 54934, at *7 (E.D. La. Jan. 5, 2016) (Barbier, J.).

[349] *Thompkins*, 828 F.2d at 304 (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985)); *see also Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal quotation marks omitted)); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003).

[350] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

[351] Rec. Docs. 69-2, 69-3.

staying up to date on the detailed activities."[352] However, Plaintiffs have failed to show how approving a letter confirming the outcome of a disciplinary hearing demonstrates a failure to train or supervise subordinates on the part of Folse.[353]

Moreover, Plaintiffs have pointed to no evidence or authority that Folse's alleged actions amounted to deliberate indifference, as required for a claim for failure to train. The Fifth Circuit has held that deliberate indifference is an "extremely high" standard to meet, as "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[354] That is, the "deliberate indifference" standard requires proof that the supervisor "disregarded a known or obvious consequence of his action."[355] Actions that are "merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."[356]

Plaintiffs generally argue, without citing to the record, that Folse failed to train his subordinates. As noted *supra*, however, at the summary judgment stage, the non-moving party may not rest upon mere allegations or denials in his pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[357] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied

---

[352] Rec. Doc. 69 at 4. The Court notes that Movants have attached a letter to their motion for summary judgment dated January 19, 2016, and addressed to Plaintiffs, in which Darouse confirms "the disciplinary action taken as a result of the expulsion hearing of January 14, 2016." The letter is signed "Sincerely, Kevin R. Darouse" and also contains Folse's signature under the words "Approved by." *See* Rec. Doc. 69-3 at 8.

[353] *See Gates*, 537 F.3d at 435.

[354] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009); *See also Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (noting that an official must "know of and disregard an excessive risk to the victim's health or safety" to constitute "deliberate indifference"); *Estate of Davis ex rel. McCully*, 406 F.3d at 381.

[355] *Evett*, 330 F.3d at 689.

[356] *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

[357] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v.*

merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[358] Plaintiffs have not pointed to evidence to raise a genuine dispute of material fact as to any essential element of their claim against Folse for failure to train. Conclusory allegations that Folse was aware of the activities surrounding M.D.'s suspension and that he failed to train School Board employees are not sufficient at the summary judgment stage. Accordingly, Movants are entitled to summary judgment on Plaintiffs' claim against Folse in his personal capacity under Section 1983 for failure to train.

Even assuming Plaintiffs had pointed to sufficient evidence to raise a genuine dispute of material fact as to their claim against Folse, Plaintiffs have not cited to any authority to overcome Folse's defense of qualified immunity. As noted *supra*, to determine if qualified immunity is appropriate, the Court examines the summary judgment record and considers whether Plaintiffs have pointed to sufficient evidence to raise a genuine issue of material fact that suggests: (1) Folse's conduct violated Plaintiffs' constitutional rights; and (2) Folse's actions were objectively unreasonable in light of the law that was clearly established at the time of the incident.[359] Plaintiffs have failed to point to any evidence that Folse violated Plaintiffs' constitutional rights by failing to train his employees. Nor have Plaintiffs pointed to any authority, and the Court has found none, that Folse's conduct in approving a letter to M.D.'s parents was objectively unreasonable under clearly established law at the time of the events at issue. Accordingly, Plaintiffs have not overcome Folse's defense of qualified immunity.

---

*Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[358] *Little*, 37 F.3d at 1075.

[359] *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002); *see also Saucier*, 533 U.S.at 207–208.

Therefore, based on the foregoing, the Court finds that Movants are entitled to summary judgment on Plaintiffs' claims against the individual Movants in their personal capacities under Section 1983.

3. **Whether Movants are Entitled to Summary Judgment on Plaintiffs' Claims against the School Board under Section 1983**

Movants argue that Plaintiffs' claims under Section 1983 against the School Board should be dismissed, as M.D. was disciplined as mandated by Louisiana Revised Statute § 17: 416, which requires a student found guilty of possession or distribution of a controlled substance to be suspended for a minimum of four complete school semesters.[360] In opposition, Plaintiffs argue that the School Board clearly exceeded its authority under Louisiana Revised Statute § 17:416 and that § 17:416 is unconstitutional.[361] In the amended complaint, Plaintiffs further allege that the School Board is responsible for the violations of Plaintiffs' civil rights by its employees and that the School Board implemented a policy "designed . . . to avoid due process hearings" and "to evade compliance with constitutional due process."[362] Plaintiffs further allege that the School Board failed to exercise reasonable care in hiring and training its officials.[363]

Plaintiffs have challenged the constitutionality of Louisiana Revised Statute § 17:416.[364] Therefore, in accordance with Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b), the Court has certified the constitutional challenge and given notice to the state attorney general.[365]

---

[360] Rec. Doc. 62 at 23.

[361] Rec. Doc. 69 at 3.

[362] Rec. Doc. 15 at 6.

[363] *Id.* at 17.

[364] *See* Rec. Doc. 15 at 7.

[365] *See* Rec. Doc. 84.

Thus, at this time, the Court will defer its ruling on Plaintiffs' claims under Section 1983 against the School Board as it awaits the state attorney general's intervention in the instant action and has an opportunity to rule on the constitutionality of Louisiana Revised Statute § 17:416.

### 4. Whether the Court should Exercise Supplemental Jurisdiction over any Remaining State Law Claims against Movants

Finally, Movants argue that the individual Movants are entitled to qualified immunity as to any state law claims against them, or that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 1367(c).[366] Plaintiffs do not directly address Movants' arguments regarding any potential state law claims.

A district court, in its discretion, may decline to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(c).[367] However, considering there remains a federal constitutional challenge to Louisiana Revised Statute § 17:416, and, therefore, a federal cause of action remains, the court will defer its decision on whether to decline the exercise of supplemental jurisdiction over any state law claims at this time. Moreover, Plaintiffs' amended complaint does not sufficiently explain its state law claims, and Plaintiffs failed to elaborate on them in its opposition to this motion.

## IV. Conclusion

Based on the foregoing, the Court finds that Movants are entitled to summary judgment on Plaintiffs' claims against them in both their individual and official capacities under 42 U.S.C. § 1983. The Court denies Defendants' motion to the extent it requests dismissal of Plaintiffs' state law claims or in the alternative requests the court to decline to exercise supplemental jurisdiction over any remaining state law claims at this time. Finally, the Court denies Defendants' request for

---

[366] Rec. Doc. 62-1 at 22.

[367] 28 U.S.C. § 1367(c).

summary judgment on Plaintiffs' claims pursuant to Section 1983 against the School Board, as the Court declines to decide that issue pending this Court's decision regarding the constitutionality of Louisiana Revised Statute § 17:416. Finally, the Court grants Plaintiffs leave to amend their complaint within 14 days of this order to provide a more definite statement regarding their state law claims.

Accordingly,

**IT IS HEREBY ORDERED** that Movants' "Motion for Summary Judgment"[368] is **GRANTED IN PART** as Plaintiffs' claims pursuant to 42 U.S.C. § 1983 against Keven R. Darouse, W.L. Folse, III, Leonard Tridico, Neal M. Hennegan, Peter J. Jabbia, and Michael Astugue in both their individual and official capacities are hereby **DISMISSED**; and

**IT IS FURTHER ORDERED** that Movants' "Motion for Summary Judgment" is **DENIED IN PART** to the extent it requests this Court dismiss Plaintiffs' state law claims or, in the alternative, decline the exercise of supplemental jurisdiction over Plaintiffs' state law claims.

**IT IS FURTHER ORDERED** that Plaintffs are granted leave to amend their complaint within 14 days to provide a more definite statement as to any alleged state law claims.

**IT IS FURTHER ORDERED** that Movants' "Motion for Summary Judgment" is **DENIED IN PART** regarding Movants' request for summary judgment on claims against St. Tammany Parish School Board.

**NEW ORLEANS, LOUISIANA,** this  8th  day of September, 2017.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[368] Rec. Doc. 62.